IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BARBARA SLINGWINE,

    Plaintiff,

v.      Civil Action No. 09-991-RGA

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION

Angela Pinto Ross, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Dina White Griffin, Special Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

August 3, 2012

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff, Barbara Slingwine, appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-433, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Slingwine and the Commissioner. (D.I. 14, 20). For the reasons set forth below, the Court grants Slingwine's motion for summary judgment, denies the Commissioner's motion, and remands for further proceedings.

## BACKGROUND

### I. Procedural History

Slingwine filed her application for DIB on March 29, 2005 and for SSI on April 7, 2005, claiming she had been disabled since March 17, 2005 due to depression, anxiety, chronic pain, attention deficit disorder (ADD), gastroesophageal reflux disease (GERD), chronic sinusitis, hiatal hernia, back pain, migraines, and sleep disorder. (D.I. 10 ("Transcript" and hereafter "Tr.") at 25). Slingwine's application was denied initially on July 16, 2005 and again was denied upon reconsideration on November 1, 2005. (Tr. 25, 43, 50). Thereafter, a hearing was held before an Administrative Law Judge ("ALJ") on April 23, 2007. (Tr. 25). The ALJ issued a decision dated June 22, 2007. (Tr. 25-35). The Appeals Council denied Slingwine's request for review on August 4, 2009, making the ALJ's decision the final decision of the Commissioner. (Tr. 8-10). Slingwine filed this lawsuit on December 23, 2009. (D.I. 1).

1

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the ALJ's decision, Slingwine was 39 years old and defined as a younger individual under 20 C.F.R. §§ 404.1563(c), 416.963. Slingwine has a high school education (Tr. 77) and past work experience as a medical claims processor (Tr. 72), physician biller (Tr. 72), and flagger (Tr. 495).

Slingwine's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence. Plaintiff suffers from several conditions including depression, anxiety, chronic pain, sinusitis, and back pain. Slingwine's back pain dates back to 1997 when she was injured in a motor vehicle accident. (Tr. 111).

A May 23, 2003 MRI of Slingwine's lumbar spine showed mild degenerative changes of the facet joints and was otherwise normal. (Tr. 272). In March 2004, Slingwine underwent a lumbar percutaneous disc compression at L4-5 level. (Tr. 103). Slingwine consulted with Dr. Bikash Bose, a neurosurgeon, who advised her that she was a poor surgical candidate because she failed to improve after the lumbar annuloplasty. (Tr. 227). In September 2004, Dr. Bose noted that she had bilateral positive straight leg raising testing. (Tr. 229). Dr. Bose also noted that she had decreased motor strength in the glutei and hamstrings as well as difficulty walking on her heels and toes. (Tr. 229).

Slingwine started pain management treatment with Dr. Frank Falco in December 2005. (Tr. 415). She had previously seen him in October 2004. Dr. Falco administered a left L3 through S1 facet joint nerve block on March 14, 2007 and again on April 11, 2007. (Tr. 423, 418). On April 10, 2006, Slingwine received a S1-S3 posterior element block. (Tr. 394). On

2

May 23, 2006, June 14, 2006, and July 31, 2006, Dr. Falco performed right PSIS injections. (Tr. 383, 367, 357).

Dr. Falco completed a lumbar spine residual functional capacity questionnaire dated June 21, 2007. (Tr. 480-83). In the questionnaire, Dr. Falco diagnosed chronic back pain, carpal tunnel syndrome, chronic radiculopathy, chronic pain syndrome and L4-5 and L5-S1 disc herniations. (Tr. 480). Dr. Falco limited Ms. Slingwine to less than a full range of sedentary work and noted that she would frequently experience pain and other symptoms that would interfere with her attention and concentration necessary to perform even simple work tasks. (Tr. 481-82).

### B.   ALJ's Decision

In her June 22, 2007 decision, the ALJ found that Slingwine had the severe impairments of degenerative disc disease of the lumbar spine and depression with anxiety, but these severe impairments did not meet a listing. (Tr. 28). The ALJ further found that Slingwine had the residual functional capacity ("RFC") to perform light work, with some additional limitations including that she required low stress work with infrequent interaction with coworkers, supervisors and the public. (Tr. 29, 34). Based on this RFC, the ALJ determined that Slingwine could not perform past relevant work, but could perform the requirements of such "representative occupations" as assembler, general office clerk, or checker/products inspector. (Tr. 34). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 34).

### STANDARD OF REVIEW

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (2d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.22d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

4

# DISCUSSION

## I. Disability Determination Process

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant

5

is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant

6

can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert ("VE"). *See id.*

## II. Analysis

Slingwine makes four primary arguments on appeal. First, Slingwine argues that the ALJ wrongfully rejected the opinion of the state agency consultant, Dr. Borek. Second, Slingwine argues that the ALJ prematurely closed the evidentiary record and, therefore, failed to consider a lumbar spine RFC questionnaire from Slingwine's treating physician, Dr. Falco. Third, Slingwine argues that the ALJ failed to consider or address Dr. Falco's April 2007 opinion. Fourth, Slingwine argues that the ALJ erred in not finding that her chronic sinus problems to be a severe impairment.

### A. The ALJ Erred In Rejecting The State Agency Consultant's Opinion.

Dr. Borek, the state agency consultant, reviewed Slingwine's medical records on June 10, 2005. In his June 2005 opinion, Dr. Borek assessed the following limitations: occasionally lift ten pounds; frequently lift five pounds; stand and walk at least two hours; sit about six hours; occasionally climb, balance, stoop, kneel, crouch, or crawl; occasional reaching with the bilateral upper extremities; and avoid concentrated exposure to extreme cold, vibration or hazards. (Tr.

7

281-82). Dr. Borek's assessment was reviewed by three other state agency consultants, who concurred with Dr. Borek's opinion as to Slingwine's capacity for work. (Tr. 288, 342-33).

Pursuant to Social Security Ruling 96-6p, findings made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments "must be treated as expert opinion evidence of non-examining sources." *Id.*, 1996 WL 374180, at *1. An ALJ "may not ignore these opinions and must explain the weight given to these opinions in their decisions." *Id.* In *Smith v. Astrue*, the Court concluded that an ALJ's decision was not supported by substantial evidence because the ALJ erred in substituting his own lay judgment for the unanimous opinions of all medical experts, including the state agency physicians. 2010 WL 1780276, at *6 (D. Del. 2010). The Court stated that, "[a]lthough the ALJ provided analysis for . . . declining to fully accept the state agency physicians' opinions, . . . the ALJ erred in failing to consult the medical sources, i.e., to resolve conflicts in their opinions, and instead improperly substituted his own opinion on certain medical issues that are not reserved to the Commissioner." *Id.* The Court concluded that "in declining to fully credit any medical opinions in the record and failing to resolve this conflict, it is evident to the Court that the ALJ was basing his decision on his lay interpretation of the medical records and the [claimant's] condition which is impermissible." *Id.*

The ALJ rejected Dr. Borek's opinion and instead concluded that Slingwine had the RFC to perform light work with the ability to lift and carry a maximum of 20 pounds occasionally and lift 10 pounds frequently with a sit/stand option. (Tr. 29). The ALJ's rejection of Dr. Borek's opinion is not supported by substantial evidence. In rejecting Dr. Borek's opinion, the ALJ stated:

8

> I have not adopted the State Agency Consultant's opinion as
> expressed in a June 10, 2005 Physical Residual Functional
> Capacity Assessment which is consistent with a sedentary capacity
> because such an assessment fails to explain how claimant could
> function as a flagger and is not supported by the conservative
> nature of the treatment.

(Tr. 32-33). As in *Smith*, the ALJ appears to have substituted her own lay judgment about what work duties Slingwine could perform for the opinion of Dr. Borek and the other reviewing state agency physicians. Proper consideration of Dr. Borek's opinion might have resulted in additional functional limitations being incorporated into the ALJ's RFC assessment because the VE testified that Dr. Borek's limitations significantly limited the number of jobs in the sedentary occupational base. (Tr. 534). Accordingly, remand is warranted on the basis that the ALJ improperly substituted her lay judgment for the opinion of the state agency consultants.

### B. The ALJ Erred By Prematurely Closing the Record and Failing to Consider the Opinion of Plaintiff's Treating Physician.

A reviewing court may remand a case for consideration of post-decision evidence when the evidence is new, material, and good cause exists for not presenting it to the ALJ. 42 U.S.C. § 405(g); *see also Matthews v. Apfel*, 239 F.3d 589, 592-93 (3d Cir. 2001); *Szubak v. Sec'y of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is material if there is "a reasonable probability that the new evidence would have changed the outcome" of the Commissioner's decision.[1]

---

[1] This is the standard the parties have argued applies. (D.I. 15 at 13-15; D.I. 21 at 13-14 & n.2). The issue might also be looked at as one of "harmless error," for which the Plaintiff would have the burden of proof. *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). There is no doubt that there was error, as the ALJ decided the case without waiting for timely-submitted evidence.

9

At the conclusion of the administrative hearing, counsel for Plaintiff requested additional time to submit evidence from Drs. Falco and Tucker, Slingwine's treating physicians. (Tr. 537). The ALJ permitted the record to remain open until June 23, 2007. (Tr. 539). On June 22, 2007, a RFC questionnaire from Dr. Falco was faxed to the ALJ. The ALJ, however, issued her decision that same day, which was one day before the record was set to close. The Commissioner does not dispute that the ALJ closed the record early nor that the ALJ did not consider Dr. Falco's June 21, 2007 opinion. (D.I. 21 at 13 n.1; *id.* at 14 n.2). Instead, the Commissioner argues that Dr. Falco's opinion is not new nor material.

The Commissioner asserts that Dr. Falco's opinion is not new but "merely cumulative of what is already in the record" because it is consistent with the opinions of the state agency physicians that Slingwine retained the residual functional capacity to perform less than the full range of sedentary work. (D.I. 21 at 14). The Commissioner also notes that the ALJ determined that such an opinion is entitled to little weight as it conflicted with Slingwine's past work as a flagger and her conservative treatment regimen. (*Id.*; Tr. 32-33). Dr. Falco's RFC opinion, however, is the only such opinion provided by a treating physician. Furthermore, Dr. Falco's RFC is more restrictive than the state agency consultant's assessment. This evidence, therefore, is new.

The Commissioner also argues that Dr. Falco's opinion is not material. First, the Commissioner points out that Dr. Falco opines on Plaintiff's RFC, which is an administrative determination reserved to the Commissioner. *See* 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A); *see also Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009) ("Whether a claimant is disabled . . . is a decision which is reserved to the Commissioner."). The Commissioner

10

concludes, therefore, that because Dr. Falco's opinion regards an issue reserved to the Commissioner, it would not change the ALJ's decision and is not material.

The Commissioner's argument ignores that controlling weight is reserved to a treating physician's opinion that is well supported by, and not inconsistent with, the other evidence of record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). As such, Dr. Falco's medical opinion of Slingwine's ability to work is material and could potentially affect the outcome of the ALJ's decision.

The Commissioner also argues that Dr. Falco's opinion is not material because he provided it on a standard form that included no written report to support his conclusions. It is true that, "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Although the Commissioner's argument has some merit, Dr. Falco did not simply state that Slingwine is disabled but also detailed her conditions and functional limitations. Tr. 480. Because the ALJ might properly decide to give Dr. Falco's opinion controlling weight as her treating physician, and because she failed to even consider this questionnaire when she prematurely closed the record after expressly stating that it would remain open until June 23, 2007, remand is warranted.

### C. The ALJ Did Not Err In Failing To Provide A Rationale For Rejecting The April 2007 Opinion of Dr. Falco.

Plaintiff contends that the ALJ committed reversible error when she failed to mention the April 2007 medical opinion of Dr. Falco (Tr. 465) or provide any rationale for rejecting it. (D.I. 15 at 15). The opinion to which Slingwine refers is contained in a "Continuing Disability/Hospitalization Benefit Form" submitted in connection with a credit card payment

11

protection plan. (Tr. 465). In that opinion, Dr. Falco stated that Slingwine was permanently disabled and could not perform "lifting, twisting, stooping, squatting, bending or climbing ladders." (Tr. 465).

Pursuant to Social Security Ruling 96-8p, an "RFC assessment must always consider and address medical source opinions," and in cases where the RFC assessment conflicts with an opinion from a medical source, the ALJ "must explain why the opinion was not adopted." *Id.*, 1996 WL 374184, at *7. Thus, if the ALJ rejects the opinion of a treating physician, she must adequately explain the reasons for doing so on the record. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

I am not persuaded that a form submitted to a bank in connection with a credit card payment protection plan is probative evidence as to Slingwine's disability status and, therefore, conclude that the ALJ did not commit reversible error when she did not consider and address Dr. Falco's April 2007 statement. To the extent that Dr. Falco's April 2007 statement is consistent with his findings on the RFC questionnaire submitted post-decision and discussed above, the ALJ will be required to consider this evidence on remand. Accordingly, remand is not warranted on this basis.

### D. Substantial Evidence Supports the ALJ's Severity Findings.

Finally, Plaintiff also contends that the ALJ erred by not finding her chronic sinus problems to be a severe impairment. (D.I. 15 at 17-18). An impairment is not severe if it does not significantly limit a person's physical or mental ability to do basic work activities, which include the abilities and aptitudes necessary to perform most jobs. *See* 20 C.F.R. §§ 404.1521, 416.921. A finding of not disabled at step two is proper "when [the] medical evidence

12

establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28, 1985 WL 56856, at *3 (1985).

A disability applicant is required to prove that his impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). The Third Circuit has referred to the severity determination as a "*de minimis*" inquiry, which must when any doubt exists, be resolved in favor of the claimant. *See McCrea v. Comm'r*, 370 F.3d 357, 360 (3d Cir. 2004). The Commissioner's severity finding, however, is to be upheld if supported by substantial evidence. *Id.* at 360-61. Furthermore, the severity requirement is "not a toothless standard, and [Courts] have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Here, Plaintiff has produced no evidence that her sinus issues significantly limited her ability to perform basic work activities. When asked by the ALJ to explain how these conditions affected her ability to work, Plaintiff stated that her sinus issues caused headaches and fatigue but also pointed out that she was not sure whether the fatigue was the result of her depression or her sinusitis. (Tr. 521). In addition, the record evidence during the relevant period revealed only that Plaintiff sometimes complained of, or was diagnosed with, ear or sinus pain/infection, but does not show that Slingwine's family physician, Dr. Tucker, referred her to a specialist for treatment of these symptoms. (Tr. 274, 466-69, 473-74).

Accordingly, substantial evidence supports the ALJ's severity findings as to Slingwine's sinusitis and remand is not warranted on this basis.

## CONCLUSION

For the reasons discussed above, Slingwine's Motion for Summary Judgment is granted; the Commissioner's Motion for Summary Judgment is denied. The matter will be remanded for proceedings consistent with this opinion.